## WONALANCET COMPANY *vs.* COLLINS, PLASS, THAYER COMPANY.

Bristol. November 10, 1919. — January 9, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Sale. Practice, Civil,* Exceptions, Judge's charge. *Evidence,* Of contract, Extrinsic affecting writings. *Contract,* What constitutes, Construction. *Damages,* For breach of contract.

If, at the trial of an action by a purchaser against a seller for failure to deliver burlap in accordance with a contract of sale, it appears that the contract was contained in a letter from the defendant to the plaintiff, quoting terms, a reply of the plaintiff accepting the terms quoted and a sales note signed by the defendant and enclosed in a letter which stated that it was subject to the conditions mentioned in the defendant's previous letter, and the trial judge erroneously rules that the sales note contained the entire contract between the parties and excluded the letters, an exception to such ruling will not be sustained unless, on the whole evidence, it appears that substantial rights of the defendant were impaired.

In the action above described, it appeared that, in the letter of the defendant which the judge excluded, prices were quoted "subject to change of market." The sales note set as the selling price the same price and terms offered in the letter but did not state that the price was "subject to change of market." *Held,* that the quoted phrase in the defendant's letter referred to a variance of the price during the pendency of the offer, and did not affect the price after it had been fixed by the sales note, so that no harm in this respect resulted to the defendant from exclusion of the letter.

The letter of the defendant, above described, also contained a provision, not in the sales note, that "the delivery would have to be strictly subject to the arrival of our own importations." The defendant first relied on this provision in defence by an amended answer filed at the time of the trial of the action. Previous to that time, he had contended that no contract was made with the plaintiff. It appeared that the defendant never attempted to place an order for importation of burlap to fill the plaintiff's order, that it would have been impossible to procure importations to fulfil the requirements of the sale as to delivery unless the orders had been placed long before the contract with the plaintiff was made, and that the defendant did not rely on its own importations to fulfil the plaintiff's orders. *Held,* that exclusion of the letter did not harm the defendant in this respect.

In the letter of the defendant above described, there also was a statement that delivery was subject to marine disasters. It appeared that delivery from the defendant to the plaintiff was to be "f. o. b." at the city where the defendant did business, and that certain "marine disasters" respecting shipments to the defendant did not affect any importation ordered by the defendant in contem-

plation of the plaintiff's order. *Held*, that the defendant was not harmed by the exclusion of the letter in this respect.

In the charge to the jury in the action above described, the judge stated, "There is no question about this contract, but what it called for two bales on the first of each month, commencing with December." It appeared that the sales note stated, "Delivery 2 bales per month commencing December 1st," and this construction was recognized by a letter of the defendant referring to "those two bales, which I understand, are due you February 1st." *Held*, that the defendant was not harmed by the statement of fact in the charge.

At the trial of the action above described, it appeared that, in consequence of the failure of the defendant to perform the contract of sale, the plaintiff was compelled to buy elsewhere, that he had difficulty in meeting his requirements and that his mill was closed in January for that reason, that in placing replacement orders he secured minimum prices by getting three different bids on each purchase and kept the defendant informed of his needs and efforts. It did not appear that the plaintiff was able to procure burlap on the first of each month or that he could have bought at a lower price than he did. The trial judge refused to rule that "The plaintiff made no replacement purchase on a date when the goods ought to have been delivered," and that "The plaintiff has offered no sufficient evidence of its damage." *Held*, that, on the issue of damages, the defendant failed to show that his substantial rights were affected injuriously.

CONTRACT, for failure to deliver burlap alleged to have been sold to the plaintiff by the defendant. Writ dated July 29, 1916.

In the Superior Court the action was tried before *White*, J. It appeared that on October 23, 1915, the defendant wrote to the plaintiff as follows: "Replying to your favor of the 22nd, we can offer you 36″ 10 oz/40″ Calcutta for prompt shipment from Boston 7c, net 10 days, f. o. b. Boston.

"We could enter an order for a definite quantity per month for twelve months at 6.85, net 10 days, f. o. b. Boston. These prices are subject to change of market.

"We should not care to enter an order for an indefinite quantity and the delivery would have to be strictly subject to the arrival of our own importations.

"We do not anticipate any trouble in getting goods here as we have not had any since the German raiders have been driven from the sea, but you, of course, fully appreciate the difficulty of doing an importing business under the existing conditions and the necessity we are under of taking every possible precaution.

"The Calcutta market is firm and the mills seem confident that the government requirements will assure them of satisfactory business. The shipments during the month of September to the

East Coast Ports of this country were only 31,000,000 yards, which is about 50 percent of a normal shipment.

"We presume you are aware that there is an embargo on exports from Calcutta making it necessary for shippers there to get a license before they can export. The reputable houses are having no difficulty in getting these, and it is not greatly disturbing business.

"According to the government returns, the jute crop of this year is likely to be very short, but as there is a carryover of approximately 1,000,000 bales, this will relieve the shortage for the most part."

On October 25, the plaintiff replied as follows:

"Yours of the 23rd. We attach our order which we trust will be agreeable. You will note that you quoted on 36″ 10 oz / 40″, while we are buying and have always bought from you, 36″ 10 oz. We presume this is a clerical error."

On October 29, the defendant sent to the plaintiff the following, entitled a "Sales Note:"

"No. 4202.                    Boston, Mass., October 29, 1915.

Delivery subject to strikes, breakage of machinery, marine disasters and all other conditions beyond our control.

                    Messrs. Wonalancet Company, Nashua, N. H.

We confirm sale from you today of the following goods:

Quantity — 15 Bales.

Description — 36″ 10 oz / 40″ Calcutta burlaps.

Position — Delivery 2 bales per month commencing December 1st.

Price — 6.85c per yard.

Terms — Net 10 days, f. o. b. Boston.

Remarks — Your order No. 712.

                    We thank you for the order."

The "sales note" was enclosed in a letter from the defendant reading as follows: "We enclose herewith sale note in confirmation of your order No. 712 subject to the conditions mentioned in our letter quoting the goods to you. With regard to the weight of the goods, the weight of all burlaps is stated pro rata to 40″. You have always received 36″ 10 oz/40″ goods from us as you can no doubt verify by weighing some of the goods you have in stock. It is quite customary in the burlap trade to

drop the /40″ for the sake of brevity, but is universally understood that all weights are based on this width."

Other material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. The sales note is the evidenciary memorandum of the contract required by law to make the contract valid. It is not the contract itself nor the sale itself. It is merely the legal confirmation of a sale theretofore agreed to."

"3. The letter which accompanied the sales note stating that the confirmation is 'subject to the conditions of our quoting letter' is also evidence of the nature of the contract."

"4. The letter of October 23, 1915 (the quoting letter) is also evidence of the nature of the contract.

"5. If the contract entered into by the parties provided that on account of the difficulties of doing an importing business, the prices of the goods ordered would be 'subject to change of market' the defendant is not liable because the plaintiff was compelled to pay a larger price to replace goods which the defendant could not import to deliver at the times specified in the sales note.

"6. If the contract provided that the delivery of the goods contracted for was 'strictly subject to the arrival of importations' — the plaintiff cannot complain or hold the defendant liable for damages pending arrival of goods like those contracted for.

"7. If the contract called for delivery 'subject to marine disasters,' the plaintiff cannot complain or hold the defendant liable for damages if its first importation of goods of the description contracted for were destroyed by fire while *en route* to this country.

"8. The contract called for a particular size and weight of burlap. The defendant was not bound and is not liable for failure to deliver any other character of burlap."

"10. If the sale was a contract to sell 'from importations' the defendant would not be liable for failure to deliver the burlap from any stock on hand, even if it had similar burlaps on hand and not otherwise contracted for."

"12. The plaintiff made no replacement purchase on a date when the goods ought to have been delivered.

"13. The plaintiff has offered no sufficient evidence of its damage."

"16. The 'current price' which is the basis of the plaintiff's

claim for damage is the current price of identical goods and not the current price of dissimilar substitute goods, if there is an available market for the identical goods."

"23. The burden is upon the plaintiff to show affirmatively that the conditions prerequisite to the delivery of the identical goods contracted for were complied with, i. e., (a) that there was no marine loss; (b) that the goods had been imported by the defendant, and (c) that there had been no change in market value."

The rulings were refused. The portion of the charge relating to delivery on December 1, referred to in the quotation from the defendant's bill of exceptions, below, and in the opinion, was as follows:

"The rights of the parties on each individual transaction are to be settled as of the day when the contract ought to have been shipped. There is no question about this contract, but what it called for two bales on the first of each month, commencing with December until there had been in all fifteen bales delivered, and so each of these shipments is to be settled as of the time when the thing ought to have been done, unless there was some further bargain between them on that point, and if you find there was any, follow it."

Other material portions of the charge to the jury are described in the opinion.

The bill of exceptions states, "At the close of the charge the defendant reserved his exceptions, (1) to what was said in the charge about what constitutes the contract; (2) to the statement in the charge that the plaintiff might purchase in advance under the conditions named in the charge; (3) to the statement in the charge that the first bales were due to be delivered on the first day of December; (4) to the portion of the charge ruling that the plaintiff had the right to make his purchases at the time it made them, and (5) to the portion of the charge which allowed the jury to draw inferences from the prices which the plaintiff paid to determine current prices on the dates at which the plaintiff should have made these purchases; also separately to the refusal of the court to give each one of the several requests for rulings which are enumerated above."

The jury found for the plaintiff in the sum of $1,115.07; and the defendant alleged exceptions.

The case was submitted on briefs.

*A. S. Phillips*, for the defendant.

*H. Holt, Jr.*, for the plaintiff.

DE COURCY, J.   The Wonalancet Company, of Nashua, New Hampshire, on October 25, 1915, sent an order for fifteen bales of burlap to the defendant corporation at its Boston office.   On October 29 the defendant's manager wrote to the plaintiff, enclosing a sales note in confirmation of the order.   The defendant failed to send the goods, notwithstanding repeated demands; and the plaintiff was obliged to buy elsewhere, at an increased price.   In this action for failure to deliver the burlap the plaintiff obtained a verdict.

1. By requests for rulings and exceptions to portions of the charge, the defendant raises the question whether the judge erred in ruling that the entire contract was embodied in the sales note. On this point we assume, in favor of the defendant, that its letter of October 23 should also be considered, in determining what were the terms of the contract; because the sales note was sent "subject to the conditions mentioned in our letter quoting the goods to you."

The substantial rights of the defendant were not impaired, however, by the judge's erroneous construction.   The clause in the letter, "these prices are subject to change of market," plainly related to the offering price, and did not affect the price that later was fixed by the contract.   The only other provision relied on by the defendant, which is set out in the letter and not in the sales note, is that "the delivery would have to be strictly subject to the arrival of our own importations."   This first appears as a defence in the amended answer, filed at the time of the trial; up to which time the contention of the defendant was that it never made the alleged contract.   On the facts shown it is immaterial that the judge disregarded this clause.   The defendant never attempted to place an order for burlap from Calcutta in execution of the plaintiff's contract; and it would have been impossible to obtain importations for delivery on December 1 unless they had been ordered long before this contract was made.   That the defendant in fact did not rely upon its own importations is clear from the testimony of Mrs. Collins, wife of the president of the defendant corporation.   She had charge of the "burlap end" of the business;

and testified in substance that the company had an adequate supply on hand for delivery to the plaintiff, and would have covered this sale if the Boston manager had informed them of the existence of the contract.

2. For the same reasons, the clause in the sales note, "delivery subject to . . . marine disasters" has no application, on the facts disclosed. The defendant's order of November 15, for the shipment from Calcutta of twenty-five bales, was not made in contemplation of this contract; and the burlap did not reach Boston until sometime in March, 1916. The plaintiff's rights were not affected by the fire on board the "City of Naples," which apparently was carrying jute that the defendant expected to share.

3. There was no error in the statement in the charge, that according to the contract two bales were to be delivered on the first day of December. The express stipulation in the sales note was, "Delivery 2 bales per month commencing December 1st." And this construction was recognized by the reference to "those two bales, which I understand, are due you February 1st," in the defendant's letter of January 29, 1916.

4. As already stated, in consequence of the defendant's failure to make deliveries in accordance with its contract, the plaintiff was compelled to buy elsewhere. It is apparent from the correspondence that it was difficult to obtain burlap, owing to war conditions. In January the plaintiff's mill was closed because of inability to secure this material. In placing replacement orders the plaintiff secured minimum prices by getting three different bids on each purchase; and it kept the defendant informed of its needs and efforts. It does not appear that the plaintiff was able to procure burlap on the first day of each month, or that it could have bought at a lower price than it did. From statements of testimony in the judge's charge it is apparent that the jury had the benefit of quotations which are only summarized in the exceptions. In short, on the issue of damages, the defendant fails to show that its substantial rights were injuriously affected.

5. Further detailed discussion of the exceptions seems unnecessary. We have examined all of them, and find no reversible error in the conduct of the trial.

*Exceptions overruled.*